IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VANCE STRADER, | ) |
| | ) |
| | ) Civil Action No. 24-1202 |
| Plaintiff, | ) Magistrate Judge Maureen P. Kelly |
| | ) |
| v. | ) Re: ECF No. 27 |
| | ) |
| HOME DEPOT, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**KELLY, Magistrate Judge**

Plaintiff Vance Strader ("Plaintiff") brought this action against Home Depot ("Defendant") asserting Pennsylvania state law claims for slander, libel, civil conspiracy, and negligence.[1] Pending before the Court is a Motion to Dismiss Plaintiff's Claims under Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss") filed by Defendant. ECF No. 27.  For the reasons set forth herein, the Motion to Dismiss will be granted in part and denied in part.[2]

**I.   PROCEDURAL HISTORY**

Plaintiff initiated this action by filing a Motion for Leave to Proceed in Forma Pauperis ("IFP") on August 22, 2024. ECF No. 1.  The IFP Motion was granted, and Plaintiff's Complaint

---

[1] Plaintiff alleges that the Court has jurisdiction by virtue of diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1).

[2] Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case, including trial and entry of final judgment, with direct review by the United States Court of Appeals for the Third Circuit if an appeal is filed.  ECF Nos. 25, 37.

1

was docketed on September 30, 2024. ECF Nos. 5, 6. In response, Defendant filed a Motion to Dismiss for Failure to State a Claim on October 31, 2024. ECF No. 8. After conferring with opposing counsel, Plaintiff attempted to cure the defects in his original Complaint by filing an Amended Complaint on January 17, 2025. ECF No. 24. On February 4, 2025, Defendant filed the pending Motion to Dismiss, ECF No. 27, and a Brief in support thereof, ECF No. 28. Plaintiff filed his Response to the Motion on March 17, 2025. ECF No. 33.

Defendant's Motion to Dismiss is now ripe for consideration.

## II.     FACTUAL BACKGROUND

According to Plaintiff's Amended Complaint, he was shopping at the Home Depot store in Ohio Township, Pennsylvania, on or about August 24, 2023. ECF No. 24 at 2.[3] While Plaintiff was shopping, Home Depot employee Cheyenne Baker ("Baker") asked him to move out of the aisle so the staff could move merchandise down the aisle on a forklift. Id. She did not ask three white people shopping in the same aisle to move. Id. Plaintiff moved to another aisle and continued to look for a "sealant product." Id. Baker again asked Plaintiff to move out of the way for the forklift, but he continued to ask her questions about product he was looking for. Id. Plaintiff stepped into the aisle where employees were restocking to try and get the product, and an altercation ensued between Plaintiff and Baker. Id. at 3.

Plaintiff alleges that Baker pushed him and told him he could not be there. Id. Plaintiff claims that Baker then gave "an academy award-winning betrayal of an innocent woman being assaulted by a violent black man." Id. at 2. He further alleges that she "told third parties that

---

[3]     Plaintiff does not begin using numbered paragraphs in his Amended Complaint until page 6 of the document. Citations to material in the first five and a half pages of the Amended Complaint are to the appropriate page number.

2

[Plaintiff] slapped her on her face with the back side of [his] hand" and "ran around in the store telling third parties that man assaulted me." Id. at 2, 3. Plaintiff denies having struck Baker. Id.

Following the altercation, Plaintiff waited for the police to arrive, and when they did not, he drove to another Home Depot store in the North Hills of Pittsburgh. Id. at 5. Once there, he was arrested at gunpoint and handcuffed, allegedly in relation to his altercation with Baker. According to Plaintiff, he spent twelve hours in custody before he was released. Id. at 4-5. Plaintiff was never provided with any video of the incident despite requesting to see it on several occasions. Id. at 3-5.[4]

### III. STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.[5] See Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). The complaint must "state a claim to relief that is plausible on its face" by providing facts which "permit the court to infer more than the mere possibility of misconduct …," Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009), and "raise a right to relief above the speculative level," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In assessing a plaintiff's claims, "the Court must accept all non-conclusory allegations in the complaint as true, and the non-moving party 'must be given the benefit of every favorable inference.'" Mergl v. Wallace, No. 2:21-CV-1335, 2022 WL 4591394, at *3 (W.D. Pa. Sept. 30, 2022) (quoting Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) and Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992)).

"However, the Court 'disregard[s] threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements.'" Mergl, 2022 WL 4591394, at *3 (quoting City of

---

[4] Plaintiff further alleges that at some point Baker and other Home Depot employees made written statements to law enforcement regarding the incident. ECF No. 24 ¶¶ 15-18, 105, 122-23.

[5] Plaintiff's objection to the "legal rubbish" that he identifies as Rule 12(b)(6) notwithstanding, ECF No. 24 ¶¶ 1-2, this rule clearly governs in this case.

3

Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp., 908 F.3d 872, 878–79 (3d Cir. 2018) and James v. City of Wilkes-Barre, 700 F.3d 675, 681 (3d Cir. 2012)).  In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, and matters of public record, as well as undisputedly authentic documents if the complainant's claims are based on these documents.  See, e.g., Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Where, as here, the plaintiff is proceeding *pro se*, the allegations in the complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  If the court can reasonably read a *pro se* litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements.  See Boag v. MacDougall, 454 U.S. 364 (1982); U.S. ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) ((A "petition prepared by a prisoner ... may be inartfully drawn and should ... be read 'with a measure of tolerance.'") "Yet 'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (quoting Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013)).

IV.   **DISCUSSION**

    A.   **Defamation (Counts One, Three, and Four)**

In what appear to be Counts One, Three, and Four of his Amended Complaint,[6] Plaintiff brings defamation claims, including claims for both libel and slander.  Libel and slander are both

---

[6] Although Plaintiff does not set forth numbered counts in his *pro se* Amended Complaint, he does seem to divide his claims into five distinct groupings.

4

forms of defamation, libel being written or printed defamation and slander being spoken defamation. See Sobel v. Wingard, 531 A.2d 520, 522 (Pa. Super. Ct. 1987) (citing Solasko v. Paxton, 119 A.2d 230 (Pa. 1956)). Plaintiff alleges that Baker slandered him in statements made to other persons present in the Home Depot store at the time of the incident. ECF No. 24 ¶ 104. He further alleges that she and other Home Depot employees libeled him in statements to the police and in the criminal complaint. Id. ¶¶ 105, 122-23. At each count, he alleges that Defendant is vicariously liable for these defamatory statements.

Under Pennsylvania law,[7] libel and slander, both being forms of defamation, "share essentially the same elements." Rossi v. Schlarbaum, 600 F. Supp. 2d 650, 662 n.3 (E.D. Pa. 2009). See also Greenberg v. Tomlin, No. Civ. A. 92-0006, 1992 WL 189463, at *4 n.4 (E.D. Pa. July 27, 1992). When making a defamation claim under Pennsylvania law, a plaintiff must prove (1) the defamatory nature of a communication; (2) its publication by defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. See 42 Pa. C.S. § 8343(a); Balletta v. Spadoni, 47 A.3d 183, 196-97 (Pa. Commw. Ct. 2012). Defendant argues that Plaintiff has failed to allege facts sufficient to meet the publication requirement for a defamation claim as to both slander and libel. Defendant further argues that, in any event, it is not vicariously liable for any defamatory statements by Baker because she was not acting within the scope of her employment. The Court will discuss these issues in turn.

---

[7] A federal court exercising diversity jurisdiction must "apply the substantive law of the state whose laws govern the action." Robertson v. Allied Signal, Inc., 914 F.2d 360, 378 (3d Cir.1990) (citing Erie R.R. v. Tompkins, 304 U.S. 64 (1938)).

1.   **Slander**

   *a.   Publication*

As noted, Defendant's argument regarding Plaintiff's defamation claims revolves primarily around the issue of whether Plaintiff pled sufficient facts to establish publication of the alleged statements. To meet the publication element of a defamation claim, the defamatory communication must have been made to at least one third party. See Davis v. Resources for Human Dev., Inc., 770 A.2d 353, 358 (Pa. Super. Ct. 2001).

In regard to his slander claim, Plaintiff alleges that Baker published the defamatory statements when she "ran around screaming and fake crying in the store saying, making, repeating, and publishing to customers, coworkers, managers, mother, abuse against women people along with the police and the district attorney about the fake assault." ECF No. 24 ¶ 22. Defendant argues that these identifications of third parties are insufficient to meet the publication requirement for a defamation claim. ECF No. 27 ¶ 33. It asserts that Pennsylvania law requires that "[a] complaint for defamation must, on its face, identify exactly to whom the allegedly defamatory statements were made." Jaindl v. Mohr, 637 A.2d 1353, 1358 (Pa. Super. Ct. 1994). See also Reed v. Pray, No. 963 EDA 2018, 2018 WL 5117223, at *5 (Pa. Super. Ct. Oct. 22, 2018) ("As it relates to the 'publication' element for defamation, it is well-settled that the alleged defamatory communication must be published to an identified third person."). According to Defendant, Plaintiff's vague descriptions of the third parties fail to identify exactly to whom Baker's statements were made.

However, it is well-established that the Federal Rules of Civil Procedure apply in diversity actions even where such application "alters the mode of enforcing state-created rights." Hanna v. Plumer, 380 U.S. 460, 473 (1965). Therefore, contrary to Defendant's assertions, the specificity

6

with which Plaintiff must describe the identity of the recipients of the allegedly defamatory statement at the pleading stage is governed not by Pennsylvania law, but by the Federal Rules of Civil Procedure. See Cuturilo v. Jefferson Regl. Med. Ctr., No. Civ. 10-1723, 2011 WL 2941031, at *4 (W.D. Pa. July 20, 2011).

> A federal court sitting in diversity applies the federal rules of civil procedure, even when enforcing the federal rule alters the mode of enforcing state-created rights. Therefore, Federal Rule of Civil Procedure 8(a), and not Pennsylvania law, provides the standard of specificity applicable to plaintiff's defamation claim. This standard of specificity requires a plaintiff to "allege facts which sufficiently set forth the substance of the alleged defamatory statements to give proper notice of plaintiff's claim to defendants."

Rapid Circuits, Inc. v. Sun Nat. Bank, Civ. No. 10-6401, 2011 WL 1666919, at *11 (E.D. Pa. May 3, 2011) (citing Turk v. Salisbury Behav. Health, Inc., No. 09-6181, 2010 WL 1718268, at *4 (E.D. Pa. Apr. 27, 2010)).

Federal Rule of Civil Procedure 8(a) demands less specificity than does Pennsylvania law, requiring only that the pleadings contain "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (citing Twombly, 544 U.S. at 556) (internal quotation marks omitted). "Under Rule 8(a), a defamation plaintiff does not have to plead the precise defamatory statements, nor must she specifically name the person who made the statements. So long as the count provides sufficient notice to defendants, it states a claim." Abdellatif v. Alza Wrae Indus. Co., No. CV 18-2297, 2019 WL 1284689, at *9 (E.D. Pa. Mar. 20, 2019) (quoting Tuman v. Genesis Assocs., 935 F. Supp. 1375, 1391 (E.D. Pa. 1995)). "Federal courts in this district … have rejected the need to identify the precise defamatory statements, or the specific identity of the speaker(s), or the specific recipient(s) of the statements." Id. See also Visnefski v. Truist Bank, No. 3:20-CV-1432, 2021 WL 2530642, at *3 (M.D. Pa. June 21, 2021) ("In federal court, plaintiffs need only allege enough

7

facts to put defendants on notice of their claim – defamation plaintiffs need not plead the precise defamatory statements or the statements' specific delivery and receipt.").

The allegations in the Amended Complaint are sufficiently specific to satisfy Rule 8(a). For instance, Plaintiff identifies Baker's mother as one third party to whom the defamatory statements were published. Although he is understandably unable to identify her by name, it is plausible and reasonably likely that discovery will reveal that information. Plaintiff further avers that Baker published her allegedly defamatory statements to her coworkers and managers at the time of the incident. Again, Plaintiff does not identify the parties by name, but discovery is likely to reveal the identities of the managers on duty and clocked-in employees at the time of the incident. Therefore, Plaintiff's identification of the third parties to whom the alleged slander was made is sufficiently definite to survive a motion pursuant to Rule 12(b)(6).

### b. *Scope of Employment*

Defendant argues that, in any event, it cannot be held vicariously liable for Baker's defamation because, if Plaintiff's allegations are true, she was not acting within the scope of her employment. It contends that Plaintiff does nothing more than assert that Baker was clocked in at the time of the alleged incident and that this alone is not sufficient to support vicarious liability. ECF No. 27 ¶¶ 46-50. The Court disagrees with Defendant's characterization of Plaintiff's allegations as well as its conclusion.

Under Pennsylvania law, courts consider several factors when determining whether conduct falls within the scope of employment, including whether: 1) it is of the kind the employee is employed to perform; 2) it occurs substantially within the authorized time and space limits; 3) it is actuated, at least in part, by a purpose to serve the employer; and 4) if force is intentionally used by the employee against another, the use of the force is not unexpectable by the employer.

8

See Butler v. Flo-Ron Vending Co., 557 A.2d 730, 736 (Pa. Super. Ct. 1989) (citing Restatement (Second) of Agency § 228 (1958)). Upon consideration of these factors, the Court finds that Plaintiff has pled sufficient facts to establish that Baker was acting within the scope of her employment when she made the allegedly defamatory statements.

As Plaintiff avers (and Defendant does not dispute), Baker was clocked in and on duty as a Home Depot employee at the time of the incident. ECF No. 24 ¶ 47; ECF No. 27 ¶ 46. According to Plaintiff, the incident began when Baker asked Plaintiff to move out of the aisle so she and her fellow employees could restock merchandise. ECF No. 24 at 2. This request, motivated by her desire to serve her employer, began the incident which led to the alleged defamatory comments. Moreover, Plaintiff made the alleged statements at least in part to inform her supervisors of the incident. Id. ¶ 54. Plaintiff, therefore, alleges more than that Baker was clocked in at the time of the incident; he describes a close connection between Baker's job duties, which she was performing when she interacted with Plaintiff, and the alleged defamation which followed.

Defendant asserts that "a master will be liable for defamation *only* if 'the agent was apparently authorized to make the defamatory statement.'" ECF No. 27 ¶ 43 (emphasis added). For this proposition, Defendant cites Michelson v. Exxon Research & Eng'g Co., 629 F. Supp. 418, 422 (W.D. Pa. 1986). However, Michelson does not contain any such broad statement. Rather, in Michelson, the district court held that "if an agent is guilty of defamation, the principal is liable so long as the agent was apparently authorized to make the defamatory statement." Id. at 422. In other words, the Court held that the agent being apparently authorized to make a defamatory statement is a sufficient condition for vicarious liability, not that it was a necessary condition. In fact, an employer can be liable for the unauthorized acts of their employees when they are "clearly incidental to the master's business." Brumfield v. Sanders, 232 F.3d 376, 381

9

(3d Cir. 2000) (citing Shuman Est. v. Weber, 419 A.2d 169, 173 (Pa. Super. Ct. 1980)). Further, an employer's liability "may extend even to intentional or criminal acts committed by the servant" and acts that are "forbidden or done in a forbidden manner." Id,

Indeed, in determining whether an act was within an employee's scope of employment, courts look not to the alleged tortious conduct itself but to the broader matter of the role and capacity in which the employee was acting. See Souders v. Taylor, No. 1:06-CV-0061, 2006 WL 8449815, at *2 (M.D. Pa. May 5, 2006) (citing Yakowicz v. McDermott, 548 A.2d 1330 (Pa. Commw. Ct. 1988)). The issue, therefore, is not whether Defendant expressly authorized Baker's alleged statements themselves, but whether they were made in the broader context of her role and duties as an employee. As discussed, the allegations contained in the Amended Complaint are sufficient to support a finding that they were.

Therefore, the Court finds that Plaintiff's identification of the third parties to whom the alleged slander was made is sufficiently definite to survive a motion to dismiss and that Plaintiff has pled sufficient facts to establish that Baker was acting within the scope of her employment. Accordingly, the Motion to Dismiss will be denied as to Plaintiff's slander claim.

2.  **Libel**

Plaintiff's libel claim arises from the written representations allegedly made by Baker and others to law enforcement following the incident. ECF No. 24 ¶¶ 105, 122-23. Defendant claims that any such statements would be absolutely privileged under Pennsylvania law governing judicial immunity. The Court agrees.

Plaintiff's Amended Complaint refers to "District attorney Steven Sapella [*sic*], Stephen Panormios, Captain Hertzell, [and] the polite and honorable Tara Smith" as third parties to whom defamatory written communications were made. Id. ¶ 7. However, even if statements made to

10

these parties, all sworn law enforcement or judicial officers, were defamatory, they cannot be the basis for a defamation action as they are shielded by Pennsylvania's doctrine of judicial immunity. "A witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding … if it has some relation to the proceeding." Schanne v. Addis, 121 A.3d 942, 948 (Pa. 2015) (quoting Restatement (Second) of Torts § 588 (1977)). "Whether a particular statement is absolutely privileged is a question of law for the court." Pawlowski v. Smorto, 588 A.2d 36, 41 (Pa. Super. Ct. 1991). Here, the allegedly defamatory statements were accusations of a crime made to the police and district attorney for the purpose of initiating criminal prosecution, which fall squarely within the absolute privilege of judicial immunity. See id. at 42 (holding that the scope of the absolute judicial privilege applies "to private parties involved in providing information to the proper authorities in connection with the suspected commission of a crime"). See also Genco v. Luffey, No. 2:21-CV-01518, 2022 WL 18231566, at *6 (W.D. Pa. Dec. 20, 2022), report and recommendation adopted, No. 2:21-CV-01518, 2023 WL 155278 (W.D. Pa. Jan. 11, 2023).

"Importantly, the existence of the privilege does not depend upon the motive of the defendant in making the allegedly defamatory statement. The privilege is absolute and cannot be destroyed by abuse." Marino v. Fava, 915 A.2d 121, 124 (Pa. Super. Ct. 2006) (quotation omitted). Thus, even if Baker's motive was improper as alleged by Plaintiff, any statements made to law enforcement in the course of the investigation are absolutely privileged and cannot form the basis for defamation liability.

Therefore, the only written communications alleged here are absolutely privileged by judicial immunity. Accordingly, the Motion to Dismiss will be granted as to Plaintiff's libel claim.

B.    **Civil Conspiracy (Count Two)**

At what the Court construes as Count Two of the Amended Complaint, Plaintiff alleges that Defendant engaged in a civil conspiracy to commit "racist, defaming, deceitful, assaulting and tortious behavior." ECF No. 24 ¶¶ 64, 66. Plaintiff identifies the co-conspirators as "Edward Decker, Home Depot, their managers, supervisors[,] employees, Cheyenne Baker, Captain Hertzell, Stephen Panormios, Ohio township police and I do believe North hills police along with the county of Allegheny." Id. ¶ 64.[8] He asserts that these co-conspirators "conspired to a Brady violation by withholding and not looking at Home Depot videos of me so-called and allegedly pimp slapping their young white employee." Id. ¶ 95. He further claims that they "combined with a common purpose to lock [him] up on a lie." Id. ¶ 98. He states that "Edward Decker, Home Depot, their managers and supervisors along with Cheyenne Baker all conspired to lie, slander and defame me to put me in jail without probable cause." Id. ¶ 34. Plaintiff alleges that "[t]he conspiracy started with [t]his alleged lie of a smack." Id. ¶ 84.

A civil conspiracy exists where two or more persons combined or agreed to perform an unlawful act or perform an otherwise lawful act by unlawful means. See Petula v. Mellody, 588 A.2d 103, 107 (Pa. Commw. Ct. 1991); Burnside v. Abbott Laboratories, 505 A.2d 973, 980 (Pa. Super. Ct. 1985). "Civil conspiracy is not an independently actionable claim; rather, 'absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act.'" Woodward v. ViroPharma Inc., No. 3222 EDA 2011, 2013 WL 1485110, at *11 (Pa. Super. Ct. Apr. 3, 2013) (quoting Goldstein v. Phillip Morris, Inc., 854 A.2d 585, 590 (Pa. Super. Ct. 2004)).

---

[8]    Other than Defendant, none of the other alleged co-conspirators are named parties to this action.

12

To state a claim for civil conspiracy under Pennsylvania law, a plaintiff must allege: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damages." Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003). A plaintiff must also allege malice or intent to injure on the part of the alleged conspirators. See Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa. 1979). Plaintiff has failed to plead facts sufficient to establish any common purpose among the alleged co-conspirators or any malice or intent to injure.

It is important to remember that a conspiracy is not established merely by the parallel conduct of different parties; it must embody a "meeting of the minds" to violate the plaintiff's rights. Brazil v. Scranton Sch. Bd., No. 3:22-CV-01514, 2023 WL 5916470, at *12 (M.D. Pa. Sept. 11, 2023). "[I]t is insufficient for Plaintiff to show merely that Defendants had a common goal or acted in concert; rather, Plaintiff must show through specific facts that Defendants reached an understanding or agreement to violate Plaintiff's civil rights." Rife v. Borough of Dauphin, 647 F. Supp. 2d 431, 450 (M.D. Pa. 2009). See also Fullman v. Philadelphia Int'l Airport, 49 F. Supp. 2d 434, 444 (E.D. Pa. 1999). Plaintiff's allegations fail to establish any meeting of the minds or shared understanding among the alleged co-conspirators to act as to harm him.

Attempting to show the existence of a common malicious purpose, Plaintiff describes the participants in the conspiracy as "prejudiced and racist Europeans" with "deep rooted prejudice." ECF No. 24 ¶¶ 92-93. He further states, "Every last one of the conspirators are of European descent and all the conspirators have been taught and trained that it is okay to assault and lie on original people by Home Depot." Id. ¶ 86. This prejudice, he says, caused them to act with a "black forest wolf pack mentality." Id. ¶ 93. These are not sufficient factual allegations to

establish that the alleged co-conspirators acted with a common purpose or malice or intent to harm Plaintiff.

Again, it is not enough merely to allege that these people acted in concert; Plaintiff must set forth facts that would support such an inference. He alleges no facts that would demonstrate any common understanding among the alleged co-conspirators other than to state that they are racist Europeans, nor does he allege any specific facts that would support these allegations of racist motivation. Indeed, he alleges no facts that would support an inference that the alleged co-conspirators actually "conspired" at all, *i.e.*, there are no allegations to support a finding of any agreement among them to do anything in particular.

At best, Plaintiff describes a course of parallel conduct in which the named actors all condoned Baker's allegedly defamatory statements and facilitated their communication to the authorities. As discussed, though, parallel conduct alone is insufficient to support a conspiracy claim. Rather, Plaintiff must allege facts supporting an inference of coordination or combination between alleged conspirators. See Petula, 588 A.2d at 107. "The mere fact that two or more persons, each with the right to do a thing, happen to do that thing at the same time is not by itself an actionable conspiracy." Thompson, 412 A.2d at 473 (citing Fife v. Great A & P Tea Co., 52 A.2d 24, 39 (Pa. 1947)).

Therefore, Plaintiff's assertions are insufficient to establish the elements of common motivation and malicious intent necessary to state a claim for civil conspiracy. Accordingly, the Court will grant the Motion to Dismiss as to Plaintiff's civil conspiracy claim.

C.  **Negligence (Count Five)**

At what the Court construes as Count Five of the Amended Complaint, Plaintiff raises a claim of negligence. In order to state a claim for negligence under Pennsylvania law, a plaintiff

must allege "(1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to the interests of another." Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 139 (3d Cir. 2005). See also Grove v. Port Auth. of Allegheny Cnty., 218 A.3d 877, 889 (Pa. 2019).

It is difficult to determine the precise theory of negligence upon which Plaintiff's claim relies. On a few occasions in the Amended Complaint, he describes actions by Defendant or store management that he alleges breached their duty "to make sure that their stores are safe and their employees follow the law and make sure that the store is." ECF No. 24 ¶ 144. He references a failure to properly train and supervise employees and characterizes Baker as "untrained." Id. ¶¶ 68, 75, 76. He also alleges that Defendant should have known about Baker's "racist behavior." Id. ¶ 73. He asserts that Defendant was negligent "by not making their employee get a medical examination to see if she was assaulted by [Plaintiff]." Id. ¶ 148. Finally, Plaintiff states Defendant breached its duty of care because it "never scrutinized or challenged their employee including examining the video and checking to see if a pale white woman was slapped in the face by a 230 lb black man." Id. ¶ 149. Regardless of how the negligence claim is characterized, however, Plaintiff has failed to plead facts sufficient to establish such a claim.

"The reasonably foreseeable risk of harm defines the orbit of duty to be imposed, which duty is breached by the failure to exercise reasonable care commensurate with the circumstances." Russo v. Pittsburgh Rys. Co., 64 A.2d 666, 668 (Pa. Super. Ct. 1949). As such, "a defendant will not be found to have had a duty to prevent a harm that was not a reasonably foreseeable result of the prior negligent conduct." Fiorentino v. Rapoport, 693 A.2d 208, 217 (Pa. Super. Ct. 1997).

15

Employers are generally liable for negligent supervision of an employee only where the employer fails to exercise ordinary care to prevent an intentional harm to a third party which (1) is committed on the employer's premises by an employee acting outside the scope of his employment and (2) is reasonably foreseeable. See Gorwara v. AEL Indus., Inc., No. CIV. A. 89-6401, 1990 WL 44702, at *5 (E.D. Pa. Apr. 12, 1990) (citing Dempsey v. Walso Bureau, 246 A.2d 418, 419-22 (Pa. 1968)).

Plaintiff alleges generally that Defendant failed to properly train Baker but fails to set forth any specific allegations as to what the nature of the training was or how that training created a reasonably foreseeable risk of Baker's actions on August 24, 2023. Likewise, he does not provide any facts that would establish that Defendant's supervision of Baker, or of any other employee, was negligent. Plaintiff asserts that Defendant should have known about Baker's racist behavior but offers no facts that would establish any basis for any such knowledge on the part of Defendant prior to the incident. Without establishing that it was reasonably foreseeable to Defendant that Baker would engage in her alleged defamatory action, Plaintiff cannot establish that Defendant was negligent in training/supervising Baker. See Gorwara, 1990 WL 44702, at *5 ("Only if AEL knew or should have known that Nussbaum and other AEL employees were or probably were going to make defamatory remarks about plaintiff before the remarks were made could their tortious acts have been foreseeable.").

As to Plaintiff's claims that Defendant was negligent for failing to require Baker to get a medical examination and for failing to scrutinize or challenge Baker, the Court notes that there is no general duty to conduct an independent investigation before reporting a potential crime to the proper authorities. See Logan v. Salem Baptist Church of Jenkintown, No. 10-CV-0144, 2010

16

WL 3364203, at **7-8 (E.D. Pa. Aug. 17, 2010). Moreover, there are insufficient facts to establish a need for a medical examination of Baker, let alone a duty on Defendant's part to require one.

Plaintiff fails adequately to allege a breach of Defendant's duty of care. Accordingly, the Motion to Dismiss will be granted as to Plaintiff's negligence claim.

### D.     Amendment

If a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. See Grayson v. Mayview St. Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Budhun v. Reading Hosp. and Med. Cntr., 765 F.3d 245, 259 (3d Cir. 2014). "Amendment would be futile if the amended complaint would not survive a motion to dismiss for failure to state a claim." Budhun, 765 F.3d at 259.

As to Plaintiff's libel claim, as the Court has explained, any written statements were made to law enforcement agents in connection with the suspected commission of a crime. As such, these written statements are absolutely privileged and cannot form the basis of a claim for libel. Further amending the Amended Complaint would have no impact on this, and amendment as to Plaintiff's libel claim is therefore futile.

However, as to Plaintiff's claims for civil conspiracy and negligence, the primary deficiency here relates to a lack of facts pled that would support a plausible cause of action, and permitting amendment would therefore not necessarily be futile. Accordingly, Plaintiff may, no later than November 1, 2025, file a Second Amended Complaint to correct the pleading deficiencies identified in this Memorandum Opinion in regard to his civil conspiracy and negligence claims. Any such Second Amended Complaint:

> (1) must fully and clearly set forth factual allegations sufficient to support a claim for civil conspiracy and/or negligence;

(2) must be a pleading that stands by itself without reference to other filings in this case; and

(3) may **not** re-allege claims previously dismissed with prejudice.

V.      **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss, ECF No. 27, is granted in part and denied in part, as follows:

- GRANTED as to Plaintiff's libel claim.  This claim is dismissed with prejudice.

- GRANTED as to Plaintiff's civil conspiracy and negligence claims.  These claims are dismissed without prejudice and with leave to amend.

- DENIED as to Plaintiff's slander claim.

The Court will enter an appropriate Order to follow.

BY THE COURT,

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Dated: September 25, 2025

cc:     All counsel of record by Notice of Electronic Filing

Vance Strader
434 Ella Street
Wilkinsburg, PA 15221