**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| VANCE STRADER, | ) | |
| | ) | |
| | ) | Civil Action No. 24-1202 |
| Plaintiff, | ) | Magistrate Judge Maureen P. Kelly |
| | ) | |
| v. | ) | Re: ECF No. 44 |
| | ) | |
| HOME DEPOT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION**

**KELLY, Magistrate Judge**

Plaintiff Vance Strader ("Plaintiff") brings this action against Home Depot ("Defendant") asserting Pennsylvania state law claims for slander, libel, civil conspiracy, and negligence.[1] Pending before the Court is a Motion to Dismiss Plaintiff's Claims under Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss") filed by Defendant. ECF No. 44. For the reasons set forth herein, the Motion to Dismiss will be granted in part and denied in part.[2]

**I.    PROCEDURAL HISTORY**

Plaintiff initiated this action by filing a Motion for Leave to Proceed in Forma Pauperis ("IFP") on August 22, 2024. ECF No. 1. The IFP Motion was granted, and Plaintiff's Complaint

---

[1]    Plaintiff alleges that the Court has jurisdiction by virtue of diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1). ECF No. 43 at 1.

[2]    Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case, including trial and entry of final judgment, with direct review by the United States Court of Appeals for the Third Circuit if an appeal is filed. ECF Nos. 25, 37.

was docketed on September 30, 2024. ECF Nos. 5, 6. In response, Defendant filed a Motion to Dismiss for Failure to State a Claim on October 31, 2024. ECF No. 8. After conferring with opposing counsel, Plaintiff attempted to cure the defects in his original Complaint by filing an Amended Complaint on January 17, 2025. ECF No. 24.

On February 4, 2025, Defendant filed a Motion to Dismiss, ECF No. 27, to which Plaintiff responded on March 17, 2025, ECF No. 33. On September 25, 2025, the court issued an Order ("September 25 Order") and Opinion ("September 25 Opinion") granting Defendant's Motion to Dismiss in part and denying it in part. Specifically, the Court dismissed Plaintiff's libel claim with prejudice and dismissed Plaintiff's civil conspiracy and negligence claims without prejudice and with leave to amend. The Court denied Defendant's motion as to Plaintiff's slander claim. ECF Nos. 38, 39.

Plaintiff filed a Motion for Reconsideration of the September 25 Order and Opinion on October 24, 2025. ECF No. 41. Approximately a week later, on November 1, 2025, he filed the operative Second Amended Complaint. ECF No. 43. The Court denied Plaintiff's Motion for Reconsideration on November 21, 2025. ECF No. 46.

That same day, November 21, Defendant filed the pending Motion to Dismiss, ECF No. 44, and Brief in Support, ECF No. 45. On December 19, 2025, Plaintiff filed a Motion to Alter or Amend the September 25 Order, ECF No. 52, which the Court denied on January 8, 2026, ECF No. 55. Plaintiff filed his Response in Opposition to the Motion to Dismiss on January 6, 2026.[3]

---

[3]    While it does not impact the Court's decision, the Court notes that a number of the legal citations contained in Plaintiff's Response appear to be fictional or hallucinatory citations, often a sign that the author has utilized artificial intelligence in preparing a legal document. See Reilly v. Connecticut Interlocal Risk Mgmt. Agency, No. 3:25-cv-640, 2025 WL 1726366, at *2 (D. Conn. June 20, 2025).

ECF No. 54.  Defendant filed a Reply Brief on January 9, 2026, ECF No. 56, to which Plaintiff responded on January 12, 2026, ECF No. 57.

Defendant's Motion to Dismiss is ripe for consideration.

## II.    FACTUAL BACKGROUND

According to Plaintiff's Second Amended Complaint, he was shopping at the Home Depot store in Ohio Township, Pennsylvania, on or about August 24, 2023.  ECF No. 43 at 2.[4]  While Plaintiff was shopping, Home Depot employee Cheyenne Baker ("Baker") asked him to move out of the aisle so the staff could move merchandise down the aisle on a forklift.  Id.  She did not ask three white people shopping in the same aisle to move.  Id.  Plaintiff moved to another aisle and continued to look for a "sealant product."  Id.  Baker again asked Plaintiff to move out of the way for the forklift, but he continued to ask her questions about the product for which he was looking. Id.  Plaintiff stepped into the aisle to point at the product, and an altercation ensued between Plaintiff and Baker.  Id. at 3.

Plaintiff alleges that Baker pushed him and told him he could not be there.  Id.  Plaintiff claims that Baker then gave "an academy award-winning betrayal of an innocent woman being assaulted by a violent black man."  Id. at 2.  He further alleges that she "told third parties that [Plaintiff] slapped her on her face with the back side of [his] hand" and "ran around in the store telling third parties that man assaulted me."  Id. at 2, 3.  Plaintiff denies having struck Baker.  Id.

Following the altercation, Plaintiff waited for the police to arrive, and when they did not, he drove to another Home Depot store in the North Hills of Pittsburgh.  Id. at 5.  Once there, he was arrested at gunpoint and handcuffed, allegedly in relation to his altercation with Baker.  According

---

[4]    Plaintiff does not begin using numbered paragraphs in his Second Amended Complaint until page 6 of the document.  Citations to material in the first five and a half pages are to the appropriate page number.

to Plaintiff, he spent twelve hours in custody before he was released.  Id. at 4-5.  Plaintiff was never provided with any video of the incident despite requesting to see it on several occasions.  Id. at 3-6.[5]

## III.   STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.[6]  See Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  The complaint must "state a claim to relief that is plausible on its face" by providing facts which "permit the court to infer more than the mere possibility of misconduct…," Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009), and "raise a right to relief above the speculative level," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In assessing a plaintiff's claims, "the Court must accept all non-conclusory allegations in the complaint as true, and the non-moving party 'must be given the benefit of every favorable inference.'"  Mergl v. Wallace, No. 2:21-cv-1335, 2022 WL 4591394, at *3 (W.D. Pa. Sept. 30, 2022) (quoting Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) and Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992)).  "However, the Court 'disregard[s] threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements.'"  Id. (quoting City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp., 908 F.3d 872, 878-79 (3d Cir. 2018) and James v. City of Wilkes-Barre, 700 F.3d 675, 681 (3d Cir. 2012)).  In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, and matters of public record, as well as undisputedly authentic documents if the complainant's claims are based on these documents.  See, e.g., Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

---

[5]     Plaintiff further alleges that at some point Baker and other Home Depot employees made written statements to law enforcement regarding the incident.  Id. ¶¶ 15-18, 105, 122-23.

[6]     Plaintiff's objection to the "legal rubbish" that he identifies as Rule 12(b)(6) notwithstanding, ECF No. 43 ¶¶ 1-2, this rule clearly governs in this case.

Where, as here, the plaintiff is proceeding *pro se*, the allegations in the complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-21 (1972). If the court can reasonably read a *pro se* litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982); U.S. ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) (A "petition prepared by a prisoner ... may be inartfully drawn and should ... be read 'with a measure of tolerance.'"). "Yet 'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (quoting Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013)).

## IV.    DISCUSSION

The Second Amended Complaint raises essentially the same allegations as were set forth in the prior Amended Complaint, albeit with additional argument and legal conclusion. As noted above, in ruling on Defendant's Motion to Dismiss the prior Amended Complaint, the Court dismissed Plaintiff's libel claim with prejudice and dismissed Plaintiff's civil conspiracy and negligence claims without prejudice and with leave to amend. The Court denied Defendant's motion as to Plaintiff's slander claim.

Therefore, the Court found that Plaintiff's slander claim could proceed, that his libel claim could not, and that Plaintiff was permitted to amend the pleading to remedy his civil conspiracy and negligence claims. Despite this prior ruling, Defendant again challenges Plaintiff's slander claim, essentially asking the Court to reconsider its decision in the September 25 Order and Opinion. Furthermore, Plaintiff, in the Second Amended Complaint, attempts to revive his libel

claim, and his attempts to amend his civil conspiracy and negligence claims consist primarily of adding legal argument and conclusory statements.

Accordingly, the Court has already addressed the issues raised here. The changes in the Second Amended Complaint do nothing to change the Court's rationale.

### A.      Defamation (Counts One, Three, and Four)

In what appear to be Counts One, Three, and Four of the Second Amended Complaint,[7] Plaintiff again brings defamation claims, including claims for both libel and slander. As the Court previously explained in the September 25 Opinion, libel and slander are both forms of defamation, libel being written or printed defamation and slander being spoken defamation. See Sobel v. Wingard, 531 A.2d 520, 522 (Pa. Super. Ct. 1987) (citing Solasko v. Paxton, 119 A.2d 230 (Pa. 1956)). Plaintiff alleges that Baker slandered him in statements made to other persons present in the Home Depot store at the time of the incident. ECF No. 43 ¶ 104. He further alleges that she and other Home Depot employees libeled him in statements to the police and in the criminal complaint. Id. ¶¶ 105, 122-23. At each count, he alleges that Defendant is vicariously liable for these defamatory statements.

Under Pennsylvania law,[8] libel and slander, both being forms of defamation, "share essentially the same elements." Rossi v. Schlarbaum, 600 F. Supp. 2d 650, 662 n.3 (E.D. Pa. 2009). See also Greenberg v. Tomlin, No. Civ. A. 92-0006, 1992 WL 189463, at *4 n.4 (E.D. Pa. July

---

[7]     As in his prior Amended Complaint, although Plaintiff does not set forth numbered counts in the Second Amended Complaint, he does seem to divide his claims into five distinct groupings.

[8]     A federal court exercising diversity jurisdiction must "apply the substantive law of the state whose laws govern the action." Robertson v. Allied Signal, Inc., 914 F.2d 360, 378 (3d Cir.1990) (citing Erie R.R. v. Tompkins, 304 U.S. 64 (1938)).

27, 1992). When making a defamation claim under Pennsylvania law, a plaintiff must prove (1) the defamatory nature of a communication; (2) its publication by defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. See 42 Pa. C.S. § 8343(a); Balletta v. Spadoni, 47 A.3d 183, 196-97 (Pa. Commw. Ct. 2012).

As noted, the Court denied Defendant's prior attempt to dismiss Plaintiff's slander allegations and granted its attempt to dismiss his libel claim. Nonetheless, Defendant once again seeks dismissal of Plaintiff's slander claim, raising arguments previously rejected by the Court. Moreover, despite the dismissal of Plaintiff's libel claim with prejudice, and the multiple denials of Plaintiff's requests to reconsider that decision, Plaintiff again attempts to bring a claim for libel under substantially similar facts. The Court will address each of these situations below.

### 1.    Slander

As it did in regard to the previous Amended Complaint, Defendant argues that it cannot be held vicariously liable for Baker's alleged defamation because, if Plaintiff's allegations are true, Baker was not acting within the scope of her employment. Defendant contends that Plaintiff does nothing more than assert that Baker was clocked in at the time of the alleged incident, that she asked him to move out of the aisle so it could be restocked, and that she informed her supervisors about the incident. ECF No. 45 at 5. It asserts that these allegations are insufficient to support vicarious liability because they do not demonstrate that Baker's statements "were actuated with an intent to further Home Depot's business." Id. The Court (again) disagrees.

Under Pennsylvania law, courts consider several factors when determining whether conduct falls within the scope of employment, including whether: 1) it is of the kind the employee

is employed to perform; 2) it occurs substantially within the authorized time and space limits; 3) it is actuated, at least in part, by a purpose to serve the employer; and 4) if force is intentionally used by the employee against another, the use of the force is not unexpectable by the employer. See Butler v. Flo-Ron Vending Co., 557 A.2d 730, 736 (Pa. Super. Ct. 1989) (citing Restatement (Second) of Agency § 228 (1958)). Upon consideration of these factors, the Court finds – as it did in the September 25 Opinion – that Plaintiff has pled sufficient facts to establish that Baker was acting within the scope of her employment when she made the allegedly defamatory statements.

Indeed, Plaintiff's allegations in support of his slander claim in the Second Amended Complaint are essentially identical to those in the prior Amended Complaint. As in the earlier pleading, Plaintiff avers that Baker was clocked in and on duty as a Home Depot employee at the time of the incident. ECF No. 43 ¶ 47. According to Plaintiff, the incident began when Baker asked Plaintiff to move out of the aisle so she and her fellow employees could restock merchandise. Id. at 2. This request, motivated by her desire to serve her employer, began the incident which led to the alleged defamatory comments. Moreover, Plaintiff made the alleged statements at least in part to inform her supervisors of the incident. Id. ¶ 54. Plaintiff, therefore, describes a close connection between Baker's job duties, which she was performing when she interacted with Plaintiff, and the alleged defamation that followed.

Defendant, again relying on Section 228 of the Restatement (Second) of Agency, continues to argue that Baker's statement regarding Plaintiff was not actuated by a purpose to serve her employer. However, the Court has already explained that in determining whether an act was within an employee's scope of employment, courts look not to the alleged tortious conduct itself but to the broader matter of the role and capacity in which the employee was acting. See Souders v. Taylor, No. 1:06-cv-0061, 2006 WL 8449815, at *2 (M.D. Pa. May 5, 2006) (citing Yakowicz v.

McDermott, 548 A.2d 1330 (Pa. Commw. Ct. 1988)). The Court discussed how, regardless of whether Defendant expressly authorized Baker's alleged statements themselves, the allegations contained in the Amended Complaint were sufficient to support a finding that they were made in the broader context of Baker's role and duties as an employee. The allegations in the operative Second Amended Complaint being substantially similar, the Court has no reason to find differently here.

As the Court further explained in the September 25 Opinion, an employer can be liable for the unauthorized acts of its employees when they are "clearly incidental to the master's business." Brumfield v. Sanders, 232 F.3d 376, 381 (3d Cir. 2000) (citing Shuman Est. v. Weber, 419 A.2d 169, 173 (Pa. Super. Ct. 1980)). It also noted that an employer's liability "may extend even to intentional or criminal acts committed by the servant" and acts that are "forbidden or done in a forbidden manner." Id. The Court further discussed that in Michelson v. Exxon Research & Eng'g Co., 629 F. Supp. 418, 422 (W.D. Pa. 1986), a case cited by Defendant in its prior Motion to Dismiss, the court there held that an agent being apparently authorized to make a defamatory statement is a sufficient condition for vicarious liability, not that it was a necessary condition as Defendant had suggested.

Defendant, in the present Motion to Dismiss, contends that Souders, Brumfield, and Michelson "require closer examination." ECF No. 45 at 7. It argues that the court in Souders, for instance, had "noted that the predominant motive of the employee, whether to serve the employer's business to any appreciable extent, is a critical consideration." Id. However, this misconstrues this Court's prior decision as well as the governing law. As discussed in the September 25 Opinion, Plaintiff alleges that Baker acted within the context of performing her duties for Defendant in large part because her motive in engaging with Plaintiff appears to have been based

on the desire to perform her job duties. As noted, even assuming her statements were incidental to those duties, they were still performed in her role as an employee, and vicarious liability can still accrue. See Brumfield, 232 F.3d at 381.

Plaintiff's attempt to distinguish Brumfield fails for the same reason. There is no question that the facts in that case are distinguishable from those in this case. However, the legal principle remains the same; the issue is not whether making defamatory statements was expressly part of Baker's job duties, but whether the statements were made in the context of her performing her job. As the Court has explained repeatedly, Plaintiff's allegations are sufficient to support a finding that they were.[9]

Defendant also cites Spitsin v. WGM Transp., Inc., 97 A.3d 774 (Pa. Super. Ct. 2014), for the proposition that an employer cannot be found to be vicariously liable when the employee's actions were grossly disproportionate to his or her job responsibilities. ECF No. 45 at 5. While the legal proposition is certainly valid, the facts in Spitsin are materially different than those here. In Spitsin, the act of the employee found to be disproportionate to his duties was violently assaulting a customer to the point of fracturing his jaw. Here, Baker's act was to recount her perspective of an encounter with a customer. This situation is far different than the one in Spitsin, and more in line with the "general rule of law that when an act is done in the course of one's employment the employer will not ordinarily be excused from liability although the employe[e] abused his authority and thereby inflicted injury upon another." 97 A.3d at 777-78 (quoting Potter Title & Trust Co. v. Knox, 113 A.2d 549, 551 (Pa. 1955)).

---

[9] The same is true in regard to Defendant's attempt to distinguish Michelson, a case upon which it actually relied in its prior Motion to Dismiss.

10

Defendant's position essentially rests on its assertion that it did not employ Baker "to make false accusations of assault against a customer." ECF No. 45 at 6. But no one employs anyone to make false accusations against their interests. Baker was clearly employed, at least in part, to deal with Home Depot customers, and her actions here clearly arose out of her efforts at doing so.[10]

Accordingly, the Court again finds that Plaintiff has pled sufficient facts to establish that Baker was acting within the scope of her employment. The Motion to Dismiss will be denied as to Plaintiff's slander claim.

**2.    Libel**

The libel claim contained in the Second Amended Complaint is virtually identical to the one dismissed with prejudice by the September 25 Order and Opinion. ECF Nos. 38, 39. As discussed above, the Court has likewise twice rejected Plaintiff's requests to reconsider this decision. ECF Nos. 46, 55. For a fourth – and final – time, the Court finds that Plaintiff's allegations fail to raise a viable claim for libel.[11]

In regard to Plaintiff's claims regarding the written representations allegedly made by Baker and others to law enforcement following the incident, as the Court has explained, these statements cannot be the basis for a defamation action as they are shielded by Pennsylvania's doctrine of judicial immunity. "A witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding ... if it has

---

[10]    Defendant suggests that the situation may have been different had Baker asserted that Plaintiff engaged in theft or property damage because such actions would relate to Defendant's business interests, whereas a statement that she had been assaulted "solely concern[s] an alleged act on/toward her own body." ECF No. 45 at 9. The implication that an employee reporting an assault by a customer to her employer is not in the employer's interest is completely frivolous.

[11]    Defendant's only response to Plaintiff's renewed libel count is to state that the Court already dismissed it with prejudice, ECF No. 45 at 1, which is sufficient under the circumstances here.

some relation to the proceeding." Schanne v. Addis, 121 A.3d 942, 948 (Pa. 2015) (quoting Restatement (Second) of Torts § 588 (1977)). "Whether a particular statement is absolutely privileged is a question of law for the court." Pawlowski v. Smorto, 588 A.2d 36, 41 (Pa. Super. Ct. 1991).

Here, the allegedly defamatory statements were accusations of a crime made to the police and district attorney for the purpose of initiating criminal prosecution, which fall squarely within the absolute privilege of judicial immunity. See id. at 42 (holding that the scope of the absolute judicial privilege applies "to private parties involved in providing information to the proper authorities in connection with the suspected commission of a crime"). See also Genco v. Luffey, No. 2:21-cv-1518, 2022 WL 18231566, at *6 (W.D. Pa. Dec. 20, 2022), report and recommendation adopted, No. 2:21-cv-1518, 2023 WL 155278 (W.D. Pa. Jan. 11, 2023).

"Importantly, the existence of the privilege does not depend upon the motive of the defendant in making the allegedly defamatory statement. The privilege is absolute and cannot be destroyed by abuse." Marino v. Fava, 915 A.2d 121, 124 (Pa. Super. Ct. 2006) (quotation omitted). Thus, even if Baker's motive was improper as alleged by Plaintiff, any statements made to law enforcement in the course of the investigation are absolutely privileged and cannot form the basis for defamation liability.

Plaintiff continues to further allege that he is "sure" that Baker also texted her defamatory statements to someone and again suggests that discovery would show that communications were reduced to writing and electronically transmitted as texts or emails. However, as the Court has discussed in denying Plaintiff's prior motions to reconsider, the vague claim that there *could* be written defamatory material beyond that which the Court has already found to be absolutely privileged is insufficient to support a claim for libel. See Tripati v. Corizon Inc., No. CV 16-00282,

2018 WL 513381, at *22 (D. Ariz. Jan. 23, 2018) ("[D]iscovery may not serve as a fishing expedition for a claim. Plaintiff must first allege *facts* sufficient to state a claim against each of the Defendants ...." (emphasis in original)). Plaintiff cannot simply assert that such material exists in the hope that it is uncovered during discovery.

Therefore, the only written communications properly alleged here are absolutely privileged by judicial immunity. The Court reaffirms that Plaintiff's libel claim remains dismissed with prejudice.

### B.    Civil Conspiracy (Count Two)

In the September 25 Opinion, the Court found that Plaintiff's assertions at what it construed as Count Two of the Amended Complaint were insufficient to establish the elements of common motivation and malicious intent necessary to state a claim for civil conspiracy. ECF No. 38 at 12-14. It therefore dismissed Plaintiff's civil conspiracy claim, but without prejudice and with leave to amend. Although Plaintiff has amended his claim, it still fails to state a valid cause of action.

The underlying factual allegations of Plaintiff's civil conspiracy claim remain largely unchanged; what Plaintiff has done is add conclusory language that Defendant and the alleged co-conspirators had a "meeting of the minds." Nonetheless, although Plaintiff includes this phrase repeatedly in the Second Amended Complaint, he alleges no additional facts that would actually demonstrate that any such meeting of the minds occurred.

Plaintiff again alleges that Defendant engaged in a civil conspiracy to commit "racist, defaming, deceitful, assaulting and tortious behavior." ECF No. 43 ¶¶ 64, 66. Plaintiff again identifies the co-conspirators as "Edward Decker, Home Depot, their managers, supervisors[,] employees, Cheyenne Baker, Captain Hertzell, Stephen Panormios, Ohio township police and I do

13

believe North hills police along with the county of Allegheny." Id. ¶ 64.[12] He continues to assert that these co-conspirators "conspire[d] to a Brady violation by withholding and not looking at Home Depot videos of me so-called and allegedly pimp slapping their young white employee in the face with a backhand." Id. ¶ 95. He further claims that they "combined with a common purpose to lock [him] up on a lie." Id. ¶ 98. He states that "Edward Decker, Home Depot, their managers and supervisors along with Cheyenne Baker all conspired to lie, slander and defame me to put me in jail without probable cause." Id. ¶ 34. Plaintiff alleges that "[t]he conspiracy started with [t]his alleged lie of a smack." Id. ¶ 84.

As the Court discussed in the September 25 Opinion, a civil conspiracy exists where two or more persons combined or agreed to perform an unlawful act or perform an otherwise lawful act by unlawful means. See Petula v. Mellody, 588 A.2d 103, 107 (Pa. Commw. Ct. 1991); Burnside v. Abbott Laboratories, 505 A.2d 973, 980 (Pa. Super. Ct. 1985). To state a claim for civil conspiracy under Pennsylvania law, a plaintiff must allege: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damages." Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003). A plaintiff must also allege malice or intent to injure on the part of the alleged conspirators. See Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa. 1979).

The Court found that Plaintiff had failed to plead facts sufficient to establish any common purpose among the alleged co-conspirators or any malice or intent to injure in his previous Amended Complaint. In so finding, the Court explained that a conspiracy is not established merely

---

[12]    Other than Defendant, none of the other alleged co-conspirators are named parties to this action.

14

by the parallel conduct of different parties; it must embody a "meeting of the minds" to violate the plaintiff's rights. Brazil v. Scranton Sch. Bd., No. 3:22-cv-1514, 2023 WL 5916470, at *12 (M.D. Pa. Sept. 11, 2023). "[I]t is insufficient for Plaintiff to show merely that Defendants had a common goal or acted in concert; rather, Plaintiff must show through specific facts that Defendants reached an understanding or agreement to violate Plaintiff's civil rights." Rife v. Borough of Dauphin, 647 F. Supp. 2d 431, 450 (M.D. Pa. 2009). See also Fullman v. Philadelphia Int'l Airport, 49 F. Supp. 2d 434, 444 (E.D. Pa. 1999). The Court discussed that Plaintiff's allegations failed to establish any meeting of the minds or shared understanding among the alleged co-conspirators to act as to harm him.

Plaintiff certainly heeded the Court's use of the term "meeting of the minds," as he repeats the term throughout the Second Amended Complaint. However, he still fails to establish any factual basis for a meeting of the minds. Merely alleging that the supposed co-conspirators agreed to act with a common purpose adverse to Plaintiff's interests is insufficient; Plaintiff again fails to allege specific facts that would establish that they had come to an agreement to act with a common purpose or malice or intent to harm him. Indeed, he offers no facts that would support an inference that the alleged co-conspirators actually "conspired" at all; i.e., there are no allegations to support a finding of any agreement among them to do anything in particular. See Petula, 588 A.2d at 107 (stating that it is not sufficient to merely allege that others acted in concert or entered into an agreement but that a plaintiff must set forth supporting facts to indicate a conspiracy).

As with the prior Amended Complaint, at best, Plaintiff describes a course of parallel conduct in which the named actors all condoned Baker's allegedly defamatory statements and facilitated their communication to the authorities. As discussed, though, parallel conduct alone is insufficient to support a conspiracy claim. Rather, Plaintiff was required to allege facts supporting

an inference of coordination or combination between alleged conspirators. See Petula, 588 A.2d at 107. "The mere fact that two or more persons, each with the right to do a thing, happen to do that thing at the same time is not by itself an actionable conspiracy." Thompson, 412 A.2d at 473 (citing Fife v. Great A & P Tea Co., 52 A.2d 24, 39 (Pa. 1947)).

Therefore, Plaintiff's assertions remain insufficient to establish the elements of common motivation and malicious intent necessary to state a claim for civil conspiracy. Accordingly, the Court will grant the Motion to Dismiss as to Plaintiff's civil conspiracy claim.

## C.    Negligence (Count Five)

At what the Court construes as Count Five of the Second Amended Complaint, Plaintiff again raises a claim of negligence. As discussed above, the Court dismissed the negligence claim in the prior Amended Complaint because Plaintiff failed adequately to allege a breach of Defendant's duty of care. As with Plaintiff's civil conspiracy claim, though, the Court gave him leave to amend this count to cure his deficiencies. Although Plaintiff has attempted to do so, the allegations in the Second Amended Complaint still fail to state a viable cause of action.

In order to state a claim for negligence under Pennsylvania law, a plaintiff must allege "(1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to the interests of another." Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 139 (3d Cir. 2005). See also Grove v. Port Auth. of Allegheny Cnty., 218 A.3d 877, 889 (Pa. 2019).

Although the negligence allegations in the Second Amended Complaint are somewhat clearer than those in the previous Amended Complaint, it is still difficult to determine the precise

theory of negligence upon which Plaintiff's claim relies. On a few occasions in the Second Amended Complaint, he describes actions by Defendant or store management that he alleges breached their duty "to keep customers safe in the store from physical harm and lies from their employees." ECF No. 43 ¶ 138. He references a failure to properly train and supervise employees and characterizes Baker as "untrained." Id. ¶¶ 68, 75, 76. He also alleges that Defendant should have known about "his employees['] meeting of the minds to injure [Plaintiff] with malice and blatant racist behavior." Id. ¶ 73. He further appears to allege that Defendant was negligent in regard to "the Home Depot security manager hid[ing] or destroy[ing] the video of truth." Id. ¶ 140. Indeed, Defendant's alleged withholding of the video that supposedly shows the incident in question is clearly a major theme of Plaintiff's renewed negligence claim. Regardless of how the negligence claim is characterized, however, Plaintiff has again failed to plead facts sufficient to establish such a claim.

"The reasonably foreseeable risk of harm defines the orbit of duty to be imposed, which duty is breached by the failure to exercise reasonable care commensurate with the circumstances." Russo v. Pittsburgh Rys. Co., 64 A.2d 666, 668 (Pa. Super. Ct. 1949). As such, "a defendant will not be found to have had a duty to prevent a harm that was not a reasonably foreseeable result of the prior negligent conduct." Fiorentino v. Rapoport, 693 A.2d 208, 217 (Pa. Super. Ct. 1997). Employers are generally liable for negligent supervision of an employee only where the employer fails to exercise ordinary care to prevent an intentional harm to a third party which (1) is committed on the employer's premises by an employee acting outside the scope of his employment and (2) is reasonably foreseeable. See Gorwara v. AEL Indus., Inc., Civ. No. 89-6401, 1990 WL 44702, at *5 (E.D. Pa. Apr. 12, 1990) (citing Dempsey v. Walso Bureau, 246 A.2d 418, 419-22 (Pa. 1968)).

17

Plaintiff alleges generally that Defendant failed to properly train Baker but fails to set forth any specific allegations as to what the nature of the training was or how that training created a reasonably foreseeable risk of Baker's actions on August 24, 2023. Likewise, he does not provide any facts that would establish that Defendant's supervision of Baker, or of any other employee, was negligent. Plaintiff asserts that Defendant should have known about Baker's racist behavior but offers no facts that would establish any basis for any such knowledge on the part of Defendant prior to the incident. Without establishing that it was reasonably foreseeable to Defendant that Baker would engage in her alleged defamatory action, Plaintiff cannot establish that Defendant was negligent in training/supervising Baker. See Gorwara, 1990 WL 44702, at *5 ("Only if AEL knew or should have known that Nussbaum and other AEL employees were or probably were going to make defamatory remarks about plaintiff before the remarks were made could their tortious acts have been foreseeable.").

As to Plaintiff's claims that Defendant was negligent for failing to review video to determine the veracity of Baker's statements, the Court notes that there is no general duty to conduct an independent investigation before reporting a potential crime to the proper authorities. See Logan v. Salem Baptist Church of Jenkintown, No. 10-cv-144, 2010 WL 3364203, at *7-8 (E.D. Pa. Aug. 17, 2010). Moreover, "the Supreme Court of Pennsylvania 'has not recognized a cause of action for negligent spoliation of evidence, and given the opportunity, it declined to do so.'" Atl. States Ins. Co. v. Copart, Inc., 609 F. Supp. 3d 379, 391 (E.D. Pa. 2022) (quoting Pyeritz v. Pa., 32 A.3d 687, 695 (Pa. 2011)). In any event, Plaintiff never does more than state that he assumes there must be video of the incident. He provides no basis for any personal knowledge that there is or was a video of the incident that would contradict Baker's statements. In fact, he repeatedly acknowledges being told that there was no such video.

Plaintiff again fails adequately to allege a breach of Defendant's duty of care. Accordingly, the Motion to Dismiss will be granted as to Plaintiff's negligence claim.[13]

**D.      Amendment**

If a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile.  See Grayson v. Mayview St. Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Budhun v. Reading Hosp. and Med. Cntr., 765 F.3d 245, 259 (3d Cir. 2014).  "Amendment would be futile if the amended complaint would not survive a motion to dismiss for failure to state a claim."  Budhun, 765 F.3d at 259.

As to Plaintiff's libel claim, as the Court has explained, any written statements were made to law enforcement agents in connection with the suspected commission of a crime.  As such, these written statements are absolutely privileged and cannot form the basis of a claim for libel.  Further amending the Second Amended Complaint would have no impact on this, and amendment as to Plaintiff's libel claim is therefore futile.

As to Plaintiff's claims for civil conspiracy and negligence, the Court has already provided Plaintiff with an opportunity to plead facts that would support these claims.  As discussed herein, the Second Amended Complaint comes no closer than did the prior pleading to adequately identifying a factual basis for these claims.  It does not appear that Plaintiff can offer more than conclusory statements and assumptions in support of these claims, and permitting amendment would therefore also be futile.

---

[13]      In his Response in Opposition, Plaintiff also discusses at length what he refers to as his civil rights claims, *i.e.*, actions brought pursuant to 42 U.S.C. §§ 1981, 1982, 1983, 1985(3), and 1986. ECF No. 54 at 12-16. However, the Second Amended Complaint in this case contains no such claims; the only claims are those discussed herein brought against Defendant.  Plaintiff appears to be referring to a separate case he has brought regard the incident at issue here docketed at Case No. 2:25-cv-1318.  However, those claims in that separate case are not at issue here.

## V.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, ECF No. 44, is granted in part and denied in part, as follows:

- GRANTED as to Plaintiff's civil conspiracy and negligence claims.  These claims are dismissed with prejudice.

- DENIED as to Plaintiff's slander claim.

Plaintiff's libel claim remains dismissed with prejudice.  The Court will enter an appropriate Order to follow.

BY THE COURT,

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Dated: June 29, 2026

cc:    All counsel of record by Notice of Electronic Filing

Vance Strader
434 Ella Street
Wilkinsburg, PA 15221

20